07-3868-cv
*United States of America v. Abcon Associates, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008

Docket No. 07-3868-cv

Argued: November 17, 2008                    Decided: May 7 , 2009

GOLDBERG & CONNOLLY,

Defendant-Cross-Defendant-Counter-Claimant-
Cross-Claimant-Appellant,

ARA Plumbing & Heating Corp., on behalf of itself and other Judgment creditors
entitled to share in the funds received by Abcon Associates, Inc., in connection
with the St. Charles Hospital Project, Steven G. Rubin & Associates, P.C.,

Intervenor-Defendant-Counter-Claimant,

Abcon Associates, Inc., The Roslyn Savings Bank,

Defendants-Cross-Defendants-Counter-Claimants,

Hi-Lume Corporation, St. Vincent's Catholic Medical Centers of New York,
Kamco Supply Corporation,

Defendants-Cross-Defendants-Counter-Claimants,

Haas & Najarian, LLP,

Defendant-Cross-Defendant-Counter-Defendant-
Counter-Claimant-Cross-Claimant,

United States Fidelity & Guaranty Company, Lovett Silverman, HSBC USA, Inc.,

Defendants-Cross-Defendants-Counter-Claimants,

v.

NEW YORK COMMUNITY BANCORP., INC.

Defendant-Cross-Defendant-Counter-Claimant-Appellee,

United States of America, United States Postal Service,

Plaintiff-Counter-Claimant-Defendant.

---

Before: MINER, SOTOMAYOR, and RAGGI, Circuit Judges.

Appeal from an Order for Distribution of Interpleader Funds entered on August 14, 2007, in the United States District Court for the Eastern District of New York (Wexler, J.), in an interpleader action commenced by plaintiff-stakeholder, the United States of America on behalf of the United States Postal Service, against numerous defendants-claimants with competing claims to funds in the sum of $2,405,150.32 deposited by the plaintiff into the registry of the Clerk of the District Court, the District Court having denied a motion for summary judgment made by defendant-claimant-appellant Goldberg & Connolly and ordering that the appellant's claim to the fund was subordinate to defendant-claimant-appellee New York Community Bancorp's claim.

VACATED and REMANDED.

Mitchell B. Reiter, Goldberg & Connolly, Rockville Centre, New York, for Defendant-Cross-Defendant-Counter-Claimant-Cross-Claimant-Appellant.

J. Ted Donovan, Finkel, Goldstein, Rosenbloom, & Nash, LLP, New York, New York, for Defendant-Counter-Claimant-Appellee.

MINER, Circuit Judge:

Appellant Goldberg & Connolly ("G & C") appeals from an Order for Distribution of Interpleader Funds ("Order") entered on August 14, 2007, in the United States District Court for the Eastern District of New York (Wexler, J.). The Order distributed funds, inter alia, to appellee New York Community Bancorp, Inc. (f/n/a Roslyn Savings Bank) ("Roslyn"),[1] in payment of its claimed perfected security interest in an Interpleader Fund ("Fund") set up by the United States Postal Service ("USPS"). The Fund was created to satisfy a judgment the USPS owed ("USPS Judgment") to Abcon Associates, Inc. ("Abcon"), a contractor the USPS had previously retained and later learned had a number of existing claims against it, necessitating the establishment of the Fund. As a result of Roslyn's prioritized interest, the remaining claimants to the Fund, including G & C, were left with no recovery.

Prior to the Order, on December 20, 2006, G & C made a motion for summary judgment seeking a determination that Roslyn did not possess a perfected security interest in the Fund. The District Court rejected this argument and concluded that Roslyn's claim to the Fund was senior to G & C's competing claim. See United States v. Abcon Assocs., No. CV 05-3178, 2006 WL 3751261 (E.D.N.Y. Dec. 18, 2006).

In this appeal, we review the district court's analysis of Roslyn's interest in the Fund and consider whether the General Loan and Security Agreement that created Roslyn's interest constituted an assignment of judgment for purposes of N.Y. Gen. Oblig. Law § 13-103, or a

---

[1] In October 2003, New York Community Bancorp, Inc., the multi-bank holding company for New York Community Bank, completed the acquisition of Roslyn Savings Bank of Nassau County, New York. NEW YORK COMMUNITY BANK, ABOUT US, THE NYCB FAMILY OF BANKS (last visited May. 6, 2009), available at www.mynycb.com. For clarity, we refer to the appellee as "Roslyn" throughout this opinion.

security interest in money under N.Y. U.C.C. Law art. 9. We conclude that the General Loan and Security Agreement's assignment of "all sums recovered" from the USPS Judgment constituted an assignment of money or proceeds received from the USPS Judgment and not an assignment of the USPS Judgment itself. As a result, pursuant to N.Y. U.C.C. Law § 9-312(b)(3), Roslyn could perfect its interest only by taking possession of the proceeds of the Fund. Having failed to do so, Roslyn's interest in the Fund is unperfected and therefore junior to G & C's interest. We thus vacate the Order and remand to the District Court for further proceedings.

**BACKGROUND**

I.      Establishment of the Interpleader Fund and Claims Thereto

Abcon was retained by the USPS in connection with a Queens, New York construction project for work on the dock and elevators at the USPS Queens Processing and Distribution Center in Flushing, New York.

On or about December 31, 1997, the USPS terminated the contract with Abcon, alleging default in the performance of the contract. After the contract was terminated by the USPS, Abcon commenced an action in the United States Court of Federal Claims alleging wrongful termination. United States v. Abcon Assocs., No. CV 05-3178, 2006 WL 3751261, at *1 (E.D.N.Y. Dec. 18, 2006). On July 17, 2001, a judgment was entered in the Court of Federal Claims in favor of Abcon, pursuant to which Abcon was to be paid an amount "to be determined as provided by" the terms of the contract between Abcon and the USPS (the "USPS Judgment"). Abcon Assocs., Inc. v. United States, 49 Fed. Cl. 678, 690–91 (2001). On December 4, 2002, the United States Court of Appeals for the Federal Circuit affirmed the judgment of the Court of Federal Claims without opinion. Abcon Assocs., Inc. v. United States, 52 F. App'x 510 (Fed.

4

Cir. 2002).

On June 28, 2005, following an audit by the Defense Contract Audit Agency, the USPS issued a final decision determining that Abcon was to be awarded the sum of $2,405,150.32 in satisfaction of the terms of the USPS Judgment. Before that decision was issued, however, USPS received notice of various judgments and other claims against Abcon. Id. As a result of these claims, USPS did not pay the agreed-upon sum but instead obtained leave from the District Court to deposit the funds with the Clerk of the District Court. These deposited funds in the amount of $2,405,150.32 constitute the Interpleader Fund.

II.     Roslyn's Claim of Priority

After the USPS terminated its contract with Abcon, the United States Fidelity and Guaranty Company ("USF & G") paid claims in connection with various performance and/or payment bonds issued to Abcon and guaranteed by Michael Zenobia, Jr. (the President of Abcon) and his wife Theresa M. Zenobia (together, the "Zenobias"). After payment on these bonds, USF & G commenced an action in the United States District Court for the Eastern District of New York and obtained a judgment against Abcon, the Zenobias, and three related corporations for the amount of approximately $2 million (the "USF & G Judgment").

Roslyn, on or about March 12, 2002, agreed to loan Abcon, the Zenobias, and South Setauket Associates ("SSA") (a partnership neither named nor liable under the USF & G Judgment) the sum of $2,000,000 (the "2002 Roslyn Loan") to be used to satisfy the USF & G Judgment. Approximately $1.7 million of that loan was used to satisfy the USF & G Judgment. Abcon Assocs., 2006 WL 3751261, at *1.

Roslyn's extension of credit, viz. the 2002 Roslyn Loan, was secured in accordance with

the provisions of three documents executed on March 12, 2002. Id. First, the Zenobias and SSA executed a Mortgage and Security Agreement (the "Mortgage Agreement") to secure the 2002 Roslyn Loan with certain real estate.

Second, the Zenobias, Abcon, and Roslyn executed a General Loan and Security Agreement (the "Security Agreement") that granted to Roslyn, as collateral for the 2002 Roslyn Loan,

> [a]ll sums due [USF & G and/or Zenobias] received in action: USF&G v. ABCON Associates, Inc. Et al - USDC (Eastern District N.Y.) Case #98-3826, and all sums recovered by [the Zenobias] from USPS relative to "project Queens GMG-Dock Expansion, Three New Freight Elevators."

Third, USF & G and Roslyn executed an assignment agreement (the "Assignment Agreement"), pursuant to which USF & G assigned to Roslyn

> all rights, title and interest of [USF & G] in, to and under (i) the judgment dated September 24, 2001 in favor of [USF & G] in an action pending in the United States District Court for the Eastern District of New York, Civil Action No. 98-3826 entitled United States Fidelity and Guaranty Company, Plaintiff, vs. Abcon Associates, Inc., Aurora Management, Inc., Redetech, Inc., A&D Group, Inc., Michael Zenobio, Jr. And Theresa Zenobio, Defendants (the "Judgment"); and (ii) all claims that [USF & G] may have as surety against the [USPS] for completion of the project known as the "Queens GMG-Dock Expansion, Three Freight Elevators."

In exchange, Roslyn agreed to wire funds in the sum of $1.7 million — the amount of the USF & G Judgment — plus interest and $10,000 in attorneys' fees, to USF & G. This payment constituted full satisfaction of the USF & G Judgment.

In accordance with its security interests, on April 12, 2002, Roslyn filed a UCC-1 Financing Statement against the "Debtors," Zenobia and Abcon, with the New York State Secretary of State. Id. That Financing Statement named as collateral:

6

All sums recovered by Debtors (directly or through USF & G) from action USF&G v Abcon Associates, Inc. et al. USDC (Eastern District NY) Case #98-3826 and all sums recovered by Debtors (directly or through USF&G) from United States Postal Service relative to project "Queens GMG-Dock Expansion, Three New Freight Elevators."

III.   Goldberg & Connolly's Claim of Priority

Abcon's debt to claimant G & C arises from an action G & C commenced against Abcon in New York state court in 1998.  Id. at *2.  That action culminated in a judgment entered January 26, 2001, in favor of G & C in the amount of $200,014.23.  Id.  G & C delivered an execution of that judgment to the Sheriff of Nassau County, New York, on July 28, 2005.  Id. The remaining defendants-claimants' claims against the Interpleader Fund range from approximately $40,000 to $500,000.  Id.

IV.   Memorandum Decision and Order of the District Court

In September 2006, G & C filed in the District Court a motion for summary judgment, seeking a determination that Roslyn did not possess a perfected security interest in the Fund. Roslyn filed a cross-motion for summary judgment.

In its motion for summary judgment, G & C, relying on the New York Uniform Commercial Code, characterized Roslyn's security interest in the USPS Judgment as an interest in money or proceeds from the USPS Judgment — and not in the judgment itself and the rights thereto.  Thus, according to G & C, Roslyn did not possess a perfected security interest in the money that now constitutes the Interpleader Fund because "a security interest in money is perfected only when the holder of the interest is in actual possession of the money."  Id. at *2.  G & C argued that if Roslyn did not hold a perfected interest, then the judgment lien of G & C, the judgment liens of the other judgment-creditor claimants, and the liens and secured interests of the

7

other claimants to the Interpleader Fund would, as a matter of law, have priority over the claim of Roslyn.[2] Id.

In its Memorandum Decision and Order dated December 18, 2006, the District Court granted Roslyn's cross-motion for summary judgment. The District Court rejected G & C's argument that Roslyn did not have a perfected security interest in the Interpleader Fund. In so doing, the District Court observed that N.Y. Gen. Oblig. Law § 13-103 provides that a judgment for a sum of money can be transferred and that "[s]uch a transfer has been held to be a transfer of a present interest, even if the judgment is the subject of an appeal." Abcon Assocs., 2006 WL 3751261, at *3 (citing Law Research Serv. Inc. v. Martin Lutz Appellate Printers, Inc., 498 F.2d 836, 839 (2d Cir. 1974)). Thus, the District Court found that "[a]s an interest in an existing judgment, Roslyn's interest in the USPS Judgment [was] a present interest in a judgment and not a future interest in money yet to be received." Id. As such, the District Court stated that Roslyn need not be in actual possession of the money in the Fund to perfect its security interest. Id.

The District Court further observed that, "as an interest in a judgment, Roslyn's lien is specifically exempt from the filing requirements of the UCC." Id. (citing N.Y. U.C.C. Law § 9-109(d)(9)). Accordingly, "the date upon which the loan documents were executed, [March 12, 2002], and not the date of the filing of the UCC-1 [(April 12, 2002)], is the date when Roslyn's interests became a lien." Id. The District Court concluded: "Roslyn's interest in the Fund was created as of March 12, 2002. That interest was an interest in a judgment, properly transferred

---

[2] The District Court found that a "grant of priority to Roslyn [Savings Bank] will allow it to exhaust the vast majority, if not all, of the [Interpleader] Fund." Abcon Assocs., 2006 WL 3751261, at *2 ("In the event, however, that Roslyn [Savings Bank] is not granted priority, all other creditors will be paid."). We need not address these findings to resolve the appeal before us.

8

under New York law.  Accordingly, [Roslyn] has priority over all other claimants."  Id.

G & C's motion for reconsideration was denied on March 29, 2007, United States v. Abcon Assocs., No. CV 05-3178 (LDW), 2007 WL 1026418 (E.D.N.Y. Mar. 29, 2007), and the District Court entered its Order for Distribution of the Interpleader Fund on August 13, 2007.[3] This timely appeal followed.

## ANALYSIS

### I.

The District Court's grant of summary judgment is reviewed de novo.  Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992).  Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582, 305 F.3d 82, 86–87 (2d Cir. 2002).  The role of the court in deciding a motion for summary judgment "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

### II.

---

[3] The District Court's judgment was not set out in a separate document as required under Federal Rule of Civil Procedure 58(a).  Nevertheless, pursuant to Rule 58(c)(2)(B), the District Court's judgment became final 150 days after the Order was entered on the docket and, pursuant to Federal Rule of Appellate Procedure 4(a)(2), we deem G & C's Notice of Appeal to have been timely filed as of that date.  Moreover, we note that "[a] failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a)(1) does not affect the validity of an appeal from that judgment or order."  Fed. R. App. P. 4(a)(7)(B); see Joseph v. Leavitt, 465 F.3d 87, 89–90 (2d Cir. 2006).  We therefore exercise jurisdiction in this matter pursuant to 28 U.S.C. § 1291.

In this case we must determine whether the General Loan and Security Agreement constituted an assignment of a judgment for purposes of N.Y. Gen. Oblig. Law § 13-103 or a security interest in money under N.Y. U.C.C. Law art. 9. Specifically, we must ascertain whether the Security Agreement's assignment of "all sums recovered by [Abcon and Zenobia] from USPS relative to 'project Queens DMG-Dock Expansion, Three new Freight Elevators'" constituted an assignment of the USPS Judgment itself, and all rights thereto, or simply an assignment of all the money or proceeds recoverable or receivable from the USPS Judgment or otherwise arising out of the Queens construction project.

Pursuant to New York's Uniform Commercial Code § 9-312(b)(3), a security interest in money can only be perfected by taking possession, or "control," of the money. See N.Y. U.C.C. Law § 9-312(b)(3) ("[A] security interest in money may be perfected only by the secured party's taking possession under Section 9-313."); cf. Berkowitz v. Chavo Int'l, Inc., 74 N.Y.2d 144, 146–47, 544 N.Y.S.2d 569, 570 (1989) (holding that, under New York's Uniform Commercial Code, a creditor "[is] required to take possession of [a promissory] note in order to perfect its security interest therein."). By contrast, under New York law the assignment of an existing judgment awarding a sum of money is perfected at the time the assignment is executed. See N.Y. Gen. Oblig. Law § 13-103 ("A judgment for a sum of money, or directing the payment of a sum of money, recovered upon any cause of action, may be transferred; but if it is vacated or reversed, the transfer thereof does not transfer the cause of action unless the latter was transferable before the judgment was recovered"); Law Research, 498 F.2d at 837, 838 (holding that under New York law the assignment of an "existing judgment" for a sum of money is a transfer of a present interest and that the "assignment of an existing right creates an immediate lien in favor of the

10

assignee that is valid against later lien creditors of the assignor" (citing Stathos v. Murphy, 276 N.Y.S.2d 727 (N.Y. App. Div. 1966))); see also id. at 838 ("The assignment of a future right . . . creates a lien that attaches only at such time as the right accrues." (citing Okin v. Isaac Goldman Co., 79 F.2d 317, 319 (2d Cir. 1935))).[4]  Thus, if we determine that the Security Agreement transferred the USPS Judgment itself, Roslyn's interest in the Fund would have been perfected as of March 12, 2002, the date the Security Agreement was executed.  If, however, that document transferred only an interest in money to be obtained at a later date, Roslyn's interest would remain unperfected and G & C's interest in the Fund, perfected on July 28, 2005, would have priority.

We conclude that the Security Agreement's reference to "all sums recovered by [the Zenobias] from USPS relative to 'project Queens GMG-Dock Expansion, Three Freight Elevators'" expresses a clear and unambiguous intention between sophisticated parties to transfer a sum of "money" and not an existing "judgment."  See Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002) ("The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.  The best evidence of what parties to a written agreement intend is what they say in their writing.  Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." (internal quotation marks and citations omitted)).  Had these parties intended to assign the USPS Judgment and not "all sums recovered . . . relative to" the Queens construction

---

[4]  Moreover, the filing requirements of the New York Uniform Commercial Code for perfection of security interests do not apply to the assignment of a judgment.  See N.Y. U.C.C. Law § 9-109(d)(9) (stating that Article 9 of New York's Uniform Commercial Code does not apply to "an assignment of a right represented by a judgment, other than a judgment taken on a right to payment that was collateral").

11

project, they would have drafted the applicable clause of the Security Agreement using the word "judgment," or at least referenced the action from which that judgment arose. Moreover we see no difference between the use of "[a]ll sums due plaintiff (and/or Undersigned) received in [the USF & G action]" and "all sums recovered" later in the same sentence regarding the construction project. The plain language evidences the parties' intent to pledge money to Roslyn by assigning any and all money and proceeds recoverable and received from either of these two sources.

Additionally, it is uncontested that the third document executed in connection with the 2002 Roslyn Loan assigned to Roslyn USF & G's rights in the USF & G Judgment, not merely sums or proceeds recovered from the USF & G Judgment. That document — executed the same day as the General Loan and Security Agreement — refers not to "sums due" or "sums recovered" but to "an action pending" and, specifically, "the 'Judgment.'" The omission of such language from the General Loan and Security Agreement further evidences the parties' intent to pledge money, not a judgment, to Roslyn in the document at issue in this case.

Finally, insofar as the phrase "all sums recovered" is ambiguous, the ambiguity must be read against the drafter of the assignment, Roslyn. Jacobson v. Sassower, 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 382 (1985).

Roslyn relies in part on Law Research to support its position, but that case is distinguishable. In Law Research the creditor filed two secured claims with the bankruptcy court after the debtor filed its petition for bankruptcy on June 19, 1971. 498 F.2d at 837. The debtor had assigned "a part of the judgment," entered in state court in favor of the debtor, to the creditor on February 1, 1971. The assignment, however, was not filed until May 5, 1971, which the bankruptcy court determined to be clearly within the "four-month period preceding bankruptcy."

12

Id. As such, the debtor sought an order from the bankruptcy court that the assignment was voidable on the basis that it was an impermissible preferential transfer under the Bankruptcy Code. Id. On appeal, this Court affirmed the judgments of the district court and bankruptcy court rejecting the debtor's preferential-transfer argument. This Court agreed with the lower courts that the debtor could not void the pre-petition assignment of the partial judgment because "the assignment of an existing judgment creates an immediate lien in favor of the assignee that is valid against later lien creditors of the assignor." 498 F.2d at 838. This Court determined that under N.Y. Gen. Oblig. Law § 13-103, the "assignment of a judgment operates as a transfer of [a] present right to the judgment, subject though it may be to defeasance on appeal, and of the residual right to the underlying cause of action in the event of a reversal or vacation of the judgment." Id. at 839.

We therefore held that the assignment of the partial judgment in Law Research created a lien that was contemporaneously perfected at the time it was assigned on February 1, 1971, and, thus, was not voidable under the Bankruptcy Code. Id.; cf. Klar v. Bachrach (In re Modell), 71 F.2d 148, 149 (2d Cir. 1934) (holding that an agreement to assign an interest in "any verdict, decision, judgment, or proceeds thereof" that the assignor might recover in a pending suit does not constitute the assignment of a present interest). A present interest in an existing judgment was assigned in Law Research, but the Security Agreement in this case failed to transfer such an interest to Roslyn. Instead, the Security Agreement pledged only future money received or recoverable from the USF & G and USPS Judgments.

## CONCLUSION

Accordingly, we VACATE the Order of the District Court and remand the case for proceedings consistent with the foregoing.

13