12-3640-cv
Cellular S., Inc. v. Merrill, Lynch, Pierce, Fenner & Smith Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of March, two thousand thirteen.

PRESENT: DENNY CHIN,
CHRISTOPHER F. DRONEY,
            Circuit Judges,
JANE A. RESTANI,
            Judge.*

- - - - - - - - - - - - - - - - - - - -x

CELLULAR SOUTH INC.,
            Plaintiff-Appellant,

            -v.-                                    12-3640-cv

MERRILL, LYNCH, PIERCE, FENNER &
SMITH, INC., JOHN DOES A-J, JOHN
DOES A THROUGH D,
            Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:          CHARLES L. McBRIDE, JR. (Brian C. Kimball, on the brief), Brunini, Grantham, Grower & Hewes, PLLC, Jackson, Mississippi.

FOR DEFENDANTS-APPELLEES:         CARL S. BURKHALTER (A. Inge Selden, III, on the brief), Maynard, Cooper & Gale P.C., Birmingham, Alabama.

---

* The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

Appeal from the United States District Court for the Southern District of New York (Preska, <u>C.J.</u>).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the opinion and order of the district court is **AFFIRMED.**

Plaintiff-appellant Cellular South, Inc. ("Cellular") appeals from the district court's opinion and order entered August 13, 2012 granting the motion to dismiss of defendants-appellees Merrill, Smith, Pierce, Fenner & Smith Inc. et al. ("Merrill") and dismissing all of Cellular's claims with prejudice.[1] <u>See</u> <u>In re Merrill Lynch Auction Rate Sec. Litig.</u>, No. 09-md-2030, 2012 WL 3297732 (S.D.N.Y. Aug. 13, 2012). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Between August 2007 and January 2008, Cellular purchased approximately $26 million in auction rate securities ("ARS") at auctions managed by Merrill. On February 13, 2008, Merrill withdrew its support from the ARS market; Cellular was left holding illiquid long-term financial instruments.

Cellular contends that the district court erroneously dismissed its claims pursuant to the Securities Exchange Act of

---

[1] The district court did not set out a judgment in a separate document as required by Rule 58(a). Fed. R. Civ. P. 58(a). Nevertheless, we treat the judgment as entered on, and the notice of appeal as filed on, January 10, 2013 -- "150 days . . . from the entry in the civil docket." Fed. R. Civ. P. 58(c)(2)(B); <u>see also</u> Fed. R. App. P. 4(a)(2) (notice of appeal filed before entry of judgment "is treated as filed on the date of and after the entry"). We therefore exercise jurisdiction because the validity of this appeal is unaffected. <u>See</u> <u>Goldberg & Connolly v. N.Y. Community Bancorp, Inc.</u>, 565 F.3d 66, 71 n.3 (2d Cir. 2009).

1934 (the "Exchange Act") for material misrepresentation or omission and market manipulation, as well as its claims under Mississippi, North Carolina, and common law. We review de novo a district court's grant of a motion to dismiss for failure to state a claim, Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012), and reject Cellular's arguments for the reasons described below.

## A. Material Misrepresentation or Omission

Cellular first contends that Merrill either materially misrepresented, or failed to disclose, the liquidity risk of investing in ARS. The Exchange Act makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." SEC Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b) (2012). To state a claim for misrepresentation, a plaintiff must allege that defendant: (1) misstated or omitted a material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) plaintiff relied on the misstatement or omission; (5) economic loss; and (6) reliance was the proximate cause of plaintiff's injury. See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157 (2008).

Generally, a complaint must plead sufficient facts to "raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). Because, however, Cellular alleges a 10b-5 misrepresentation claim, it

-3-

must plead any alleged false statements "with particularity" and, to the extent an allegation is made on information and belief, "all facts on which that belief is formed" must also be pleaded with particularity.  15 U.S.C. § 78u-4(b)(1) (2012).

We recently decided a series of cases addressing ARS. See Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98 (2d Cir. 2012); Wilson v. Merrill Lynch & Co., 671 F.3d 120 (2d Cir. 2011); Ashland Inc. v. Morgan Stanley & Co., 652 F.3d 333 (2d Cir. 2011).  Those cases addressed, inter alia, the adequacy of disclosures made by auction brokers in connection with purchases of ARS.  In two of the cases, we held that the SEC cease and desist order dated May 31, 2006 (the "SEC Order") and Merrill's online disclosure of its ARS practices and procedures (the "Website Disclosure") sufficiently placed investors on notice of the liquidity risks inherent in ARS.  See Anschutz, 690 F.3d at 108; Wilson, 671 F.3d at 131-32.  The third case involved a similar disclosure made by Morgan Stanley; we also affirmed the dismissal of the complaint.  See Ashland, 652 F.3d at 338.

Here, Cellular alleges that, contrary to the investors at issue in the prior cases, it did not invest in ARS until after Merrill had made a "Withdrawal Decision" -- an alleged decision to exit the ARS market.  To exit the market, Merrill allegedly knew that it had to convince investors that ARS remained liquid and continue to support the auctions until Merrill had sufficiently divested itself of its substantial ARS holdings. Thus, because Merrill purportedly went from a situation where it could refuse to support the market to a situation where it knew

-4-

that it would refuse to support the market upon selling off its inventory, Cellular contends that Merrill's prior disclosures were no longer adequate. See Rombach v. Chang, 355 F.3d 164, 173 (2d Cir. 2004) ("Cautionary words about future risk cannot insulate from liability for the failure to disclose that the risk has transpired."). As the district court noted, however, Cellular made mere conclusory allegations; it failed to plead with particularity the facts surrounding the Withdrawal Decision, or the facts on which its belief that such a decision had been made was formed. See In re Merrill Lynch Auction Rate Sec. Litig., 2012 WL 3297732, at *2. As "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough" to state a claim, Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 114 (2d Cir. 1982), cited in Grandon v. Merrill Lynch & Co., 147 F.3d 184, 193-94 (2d Cir. 1998) (addressing claims under Rule 10b-5), the district court properly dismissed this claim. Cellular simply did not allege sufficient facts to differentiate this case from Ashland, Inc. v. Morgan Stanley & Co., 652 F.3d at 338.

## B. Market Manipulation

Cellular also argues that Merrill issued research reports that misrepresented the liquidity of ARS, thereby manipulating the market prices for the security. Although our prior opinions underscored that those who invested after the SEC Order and the Website Disclosure received sufficient notice that ARS liquidity could be artificially created by auction managers, we left open the possibility that a hypothetical complaint might

state a claim that, "as of the time of [plaintiff's] purchase, Merrill presently intended to place bids in every single auction, knew that each auction would fail if it did not place these bids, and signaled to its ARS investors that these securities were genuinely liquid."  Wilson, 671 F.3d at 139.  Cellular sought to harbor its complaint within this hypothetical, but we agree with the district court that its effort to do so failed.

The Exchange Act forbids the "use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance."  15 U.S.C. § 78j(b); see also 17 C.F.R. § 240.10b-5(a) (prohibits the "employ [of] any device, scheme, or artifice to defraud").  A complaint that raises a market manipulation claim must allege: (1) manipulative acts; (2) a loss; (3) caused by relying on an assumption that an efficient market operated free from manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the use of the mails or a national securities exchange.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 101 (2d Cir. 2007).  "The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."  Gurary v. Winehouse, 190 F.3d 37, 45 (2d Cir. 1999).  The market, however, "is not misled when a transaction's terms are fully disclosed."  Wilson, 671 F.3d at 130 (citation and internal quotation marks omitted).

Here, as both the SEC Order and the Website Disclosure candidly acknowledged that auction managers could -- and did -- intervene in, and set clearing rates for, their own auctions, the market was not misled.  See also Wilson, 671 F.3d at 131-32 (finding such disclosures sufficient); Anschutz, 690 F.3d at 108-09 (same).  Hence, for Cellular to show that Merrill engaged in manipulation, it had to show manipulation through Merrill's research reports.  We have independently reviewed the record, and we agree that these reports can, at best, be described as non-actionable "expressions of optimism."  Novak v. Kasaks, 216 F.3d 300, 315 (2d Cir. 2000); see also Rombach, 355 F.3d at 175 ("puffery or misguided optimism is not actionable as fraud" (internal quotation marks omitted)).  The first of these reports, released days before Cellular's first purchase, was titled "Turmoil and Opportunity in the Auction Markets" (emphasis added).  Moreover, the report, which was published after auction failures had alerted investors to the risks involved, merely stated a belief that "there could be many opportunities" for the ARS investor (emphasis added).  Thus, we agree with the district court that such statements were insufficient to establish that Merrill acted with intent to manipulate, and the district court properly dismissed these claims.  To the extent plaintiffs rely on other statements in the reports to support either a manipulation or misrepresentation claim, we conclude that these statements are similarly non-actionable.

**C.    State Law & Common Law Claims**

After a <u>de novo</u> review of the record, we conclude that Cellular's state law and common law claims were properly denied for substantially the reasons stated by the district court.  <u>See</u> <u>In re Merrill Lynch Auction Rate Sec. Litig.</u>, 2012 WL 3297732, at *3, *5.

\*    \*    \*

We have considered Cellular's remaining arguments and conclude they are without merit.  For the foregoing reasons, we **AFFIRM** the opinion and order of the district court.

                              FOR THE COURT:
                              Catherine O'Hagan Wolfe, Clerk